IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RACHEL M. DUNLAP,                               CV 08-6119-MA

        Plaintiff,                          OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

        Defendant.

ALAN STUART GRAF
P.O. Box. 98
Summertown, TN 38483
(931) 964-3127

        Attorney for Plaintiff

KENT S. ROBINSON
Acting United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 245-6309

1 - OPINION AND ORDER

LEISA A. WOLF
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-3629

    Attorneys for Defendant

MARSH, Judge.

    Plaintiff Rachel M. Dunlap seeks judicial review of the final decision of the Commissioner denying her November 24, 2004, application for disability insurance income benefits (benefits) under Title II of the Social Security Act, 42 U.S.C. §§ 401-33.

    Plaintiff was 46 years old on the date of the final decision of the Commissioner.  She seeks benefits for a closed period from April 1, 2002 through December 31, 2005, because of degenerative disc disease of the lumbar spine.  The Administrative Law Judge (ALJ) held two hearings, on May 30, 2007, and September 13, 2007.  He issued a decision on November 19, 2007, finding that, during the closed period, plaintiff was able to perform her past relevant work as a housekeeper/cleaner, admitting clerk, and dispatcher.  Plaintiff timely appealed the decision to the Appeals Council.  On February 8, 2008, the Appeals Council denied plaintiff's request for review.  The ALJ's decision, therefore, became the final decision of the Commissioner for purposes of review.

Plaintiff contends the Commissioner's decision is not supported by substantial evidence and she seeks an order from this court reversing it and remanding the case for an award of benefits.

For the following reasons, the final decision of the Commissioner is **remanded for further proceedings** as set forth herein.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. Bowen v. Yuckert, 482 U.S.137, 140 (1987). See also 20 C.F.R. § 404.1520. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

At Step One, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability.

At Step Two, the ALJ found plaintiff suffers from mild degenerative disease of the lumbar spine, which is a severe impairment under 20 C.F.R. §404.1520(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

3 - OPINION AND ORDER

At Step Three, the ALJ found this impairment does not meet or equal a listed impairment.

The ALJ found plaintiff has the residual functional capacity to perform a full range of light work.

At Step Four, the ALJ found plaintiff is able to perform her past relevant work as a housekeeper/cleaner, admitting clerk, and dispatcher. Based on this finding, the ALJ did not need to determine whether plaintiff could perform other work.

Accordingly, the ALJ found plaintiff was not disabled and denied her claim for benefits.

## ISSUES ON REVIEW

Plaintiff asserts the ALJ erred (1) in failing to find she suffers from a severe mental impairment, (2) in rejecting the opinions of multiple medical providers, and (3) in failing to give adequate reasons for rejecting the Veteran Administration's partial disability finding.

## LEGAL STANDARDS

**Burden of Proof**.

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically

4 - OPINION AND ORDER

determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

5 - OPINION AND ORDER

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000).

"If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

**RELEVANT RECORD**

1. **Plaintiff's Evidence.**

Plaintiff's evidence is drawn from disability reports plaintiff completed in January 2005 and February 2005, and her hearing testimony on September 13, 2007.

Education/Work History.

Plaintiff attended Lane County Community College and obtained certificates attesting to her completion of courses relating to the jobs of administrative assistant, medical records clerk, and data entry clerk.

From August 2004 until to the date of the hearing, plaintiff worked 28-35 hours a week performing housekeeping tasks. At the time of the hearing, plaintiff was seeking an accommodation from her employer to allow her either to reduce her hours or to work in the office.

From July 2003 until July 2004, plaintiff worked 20-22 hours a week for a towing company. Plaintiff was capable of working full-time if the additional hours were available and if her back did not "go out," which occurred on an unpredictable basis.

During this period, plaintiff took medications to control her back pain. They did not interfere with her ability to perform return office tasks.

In 2001, plaintiff worked as a scheduler for a medical group. She requested to take six weeks off to undergo a hysterectomy but was laid off.

Daily Activities/Physical Limitations.

During the closed 2002-2005 period for which she claims benefits, plaintiff's daily activities included cooking meals, doing the laundry, and driving. She did not do any yard work, or housework that included sweeping, vacuuming, dusting, and cleaning the bathroom. She shopped for groceries with the help of her husband and daughter. Her back pain prevented her loading the groceries into her car.

During this period, plaintiff was only able to sit for one hour at a time before having to get up and move around. She could stand for 30-45 minutes before needing to sit in a recliner. She used a heating pad three or four times a day for up to one-half hour at a time.

During this period, however, although plaintiff suffered from depression that made her feel "gloomy," it did not affect her working relationships.

In June 2004, plaintiff drove her family to Central Oregon for a camping vacation in Central Oregon. She did the driving because her husband chooses not to.

In early January 2005, plaintiff stated that she enjoyed sewing and painting wooden craft items two-three times a week. Her energy level, however, had been decreasing for several years, and she was only able to lift 10 lbs, walk one and one-half blocks, and sit/stand for short periods. She has a 30 minute attention span. She had recently begun using a walker in place of a cane because of increased muscle and leg weakness.

By late February 2005, plaintiff stated it was harder for her to dress herself, bathe in the tub/shower, or cook. If she was active for more than 30 minutes, she became tired and needed to rest for a couple of hours.

Plaintiff states she has a pinched nerve in her lower right side and bursitis in her right hip. Both hips "pop and grind" and hurt when it rains. Plaintiff attributes the condition to arthritis. She also has numbness in her right foot and was prescribed a cane, and then a walker, by the Veterans Administration.

2.   **Medical Records**.

   a.   **Treatment Providers.**

   Veterans Administration - Roseburg.

   Plaintiff is an Air Force veteran who was assigned a 60% service-connected disability rating dating back to two incidents in 1981 when she twisted her lumbar spine while performing aircraft maintenance, which caused her to suffer from lumbar spasms.  She was diagnosed with low back strain with degenerative disc disease at L5-S1.

   In August 2001, plaintiff sought a VA evaluation and finding that she was unemployable as a result of this condition. On examination, she appeared to exaggerate the discomfort in her lower back.  A CT scan of her lumbar spine was normal, as it had been twice before.  She was diagnosed with minimal degenerative joint changes at L4-5 and L5-S1, and minimal narrowing of the neuroforamen at L5-S1.  There was "little objective evidence to support the pain and limitations of capability."   The examiner opined she was "maximizing her discomfort level" and the physical finding "make it difficult to support that this veteran is unable to obtain or maintain gainful employment."

   In January 2002, plaintiff complained that for the past two months, she had experienced "extreme" moodiness and restlessness,

9 - OPINION AND ORDER

with difficulty sleeping, thinking clearly, and staying focused. She was prescribed Paxil.

In February 2002, Plaintiff sought new ways to deal with the pain she continued to suffer as a result of her service-connected injury. The VA enrolled her in a 10-week "psycho-educational" class which was designed to teach her the benefit of pacing her activities "and grieving the loss of life she has not been able to have because of [the pain associated with her injury]."

In March 2002, the VA diagnosed plaintiff with a mood disorder due to a general medical condition and assigned a GAF score of 55 (moderate difficulty in social, occupational or school functioning). Plaintiff participated in her first psycho-educational class to help her deal with her chronic pain issues. A week later, plaintiff complained of pain exacerbation in her low back, right hip, and right buttock that radiated into her groin, tibia and foot.

In April 2002, plaintiff continued to complain of acute and chronic back pain radiating into her legs.

In May 2002, plaintiff complained of back pain, which she rated at 8-9 on a 1-10 scale. She continued to participate in the pain management class.

In August 2002, the VA assigned plaintiff a GAF score of 45 (serious impairment in social, occupational or school functioning).

10 - OPINION AND ORDER

In November 2002, plaintiff was examined as part of a review of her continued entitlement to VA benefits. The examiner opined that "all reports of pain were subjective" and the "no report of pain to the lumbar region [or] to either hip was objectively demonstrable." He opined that plaintiff appeared to maximize her symptoms. He also noted that "multiple computerized tomography scans" and radiographic studies of plaintiff's lumbar spine and right hip were normal and showed no significant degenerative joint disease. There were "early degenerative joint changes" in plaintiff's hips that were not associated with her service-connected disability.

A week later, plaintiff was depressed and anxious, in part because of family issues.

In December 2002, plaintiff underwent a VA disability assessment to determine whether her depression was related to her low back condition. A complete psychosocial history was taken in which plaintiff discussed episodes of childhood molestation, abuse, rape, and automobile accidents. No psychological tests were performed. The examiner assigned a GAF score of 35 (major impairment in several areas, such as work, school, family relations, judgment, thinking, or mood). The examiner declined to assign separate GAF scores to plaintiff's "identified mental disorders." He noted plaintiff showed "intense anger" during

11- OPINION AND ORDER

"most of the session." He diagnosed a major depressive disorder with dependent personality disorder traits, associated with complaints of chronic pain and family problems.

In June 2003, plaintiff was depressed because she was unable to find work because of her back pain. She was assigned a GAF score of 40. A subsequent steroid injection improved her mood.

Over the next 12 months, plaintiff was treated by the VA on a monthly basis, and occasionally more frequently, for pain management relating to her low back, hips, legs, and feet. She was prescribed morphine to control her pain, but was subject to a pain contract.

In November 2004, plaintiff continued to complain of depression caused by her back pain, family finances, and inability to find suitable part-time work.

In December 2004, Nurse Practitioner Sandra Feren noted that plaintiff was overwhelmed by family issues, financial problems, pain, and her inability to work because of the pain.

In January 2005, the VA performed physical and psychological testing on plaintiff. On physical testing, plaintiff exhibited "exquisite pain behavior, poor cooperation, and guarding making examination difficult at best." On mental examination, the VA assessed a GAF score of 45 (serious impairment in social, occupational, or school functioning).

A second physical and mental examination a week later noted plaintiff was in "physically good health with the exception of her chronic pain problems and her depression." The VA opined that based on her presentation that day, plaintiff could not do any physical labor or perform a sedentary job because she would have to change positions frequently. She would not be able to interface with the public well because of her depression, "which presents as negativity and anger."

In May 2007, VA Family Nurse Practitioner Darlene Thomasec, who participated in plaintiff's 2003 VA pain management program, opined that plaintiff was no longer able to work because of her pain.

Robert Guild, M.D. - Family Practice.

In July 2004, Dr. Guild treated plaintiff for radicular back pain. Plaintiff complained of increasingly worse back pain. An MRI revealed a mildly degenerated disc at L5-S1 with a decreased signal and mild diffuse annular bulge and a small central high density annular zone, and mild stenosis at L4-5. There was no evidence of any disc herniation.

Alexis Norelle, M.D. - Neurosurgeon.

Dr. Guild referred plaintiff to Dr. Norelle. Plaintiff complained of right arm and hand pain in addition to low back and leg pain. Dr. Norelle reviewed the MRI obtained by Dr. Guild

13- OPINION AND ORDER

and noted that the cervical spine showed mild disc bulges at C5-6 and C6-7, and mild to moderate foraminal stenosis at C6-7. She opined that these findings "would not account for [plaintiff's] "right sided symptoms."

**b. Consulting Physicians.**

<u>Howard Johnson, M.D. - Surgeon</u>.
<u>Mary A. Westfall, M.D. - Psychiatrist.</u>

Dr. Johnson reviewed plaintiff's medical records and concluded that plaintiff is able to lift 10 lbs frequently, stand and sit for six hours in an eight hour workday, and push and pull on an unlimited basis. He opined that plaintiff's pain complaint were "well out of proportion to repeat imaging and exams and are not found fully credible."

Dr. Westfall concurred in this evaluation.

**c. Consulting Psychologists.**

<u>Dorothy Anderson, Ph.D. - Psychologist</u>.
<u>Frank G. Lahman, Ph.D. - Psychologist</u>.

Dr. Anderson reviewed plaintiff's medical records and concluded she suffers from major depression, resulting in mild difficulties in maintaining both social functioning and concentration, persistence and pace.

Dr. Lahman concluded the medical records do not support the low GAF scores assigned by VA doctors, and plaintiff has a non-severe psychological impairment.

**DISCUSSION**

1.  **Severity of Plaintiff's Depression**.

Plaintiff contends the ALJ erred in failing to find at Step Two that plaintiff's depression is a severe impairment. I agree.

The ALJ found from his review of the medical records that plaintiff demonstrated a "severe mental symptomatology" only on those occasions when her VA disability rating was being evaluated and when she had family problems and other situational issues. The ALJ noted that plaintiff was able to maintain work at a competitive level and engage in other activities that belied the severity of her depression.

The VA record, however, consistently reflects a diagnosis of serious depression based on GAF scores over a period of three years from 2002-2005 in the range of 35-55, which strongly suggest plaintiff has a serious mental impairment. The only medical support for a contrary view are the opinions of the consulting psychologists. Every other treating or examining medical provider who has addressed plaintiff's mental state and opined on the matter has found plaintiff has a serious depression disorder.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant.

15 - OPINION AND ORDER

Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)(internal citations omitted). In turn, "the opinions of examining physicians are afforded more weight than those of non-examining physicians." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

On this record, I conclude the ALJ erred in finding plaintiff's depression was a non-severe impairment.

**2.    Rejection of Opinions of Multiple Medical Providers.**

Plaintiff contends the ALJ rejected the opinions of numerous VA medical providers who treated plaintiff for her depression and chronic pain.

Although I find the ALJ failed to adequately assess the severity plaintiff's depression, I also find the ALJ more than adequately assessed plaintiff's physical impairments by noting the repeated absence of objective findings to support the severity of plaintiff's subjective complaints, inconsistencies in plaintiff's reporting of her physical ailments, and concerns of VA medical providers that plaintiff may exaggerate the severity of her physical impairments for purposes of secondary gain related to her VA disability rating.

On this record, I conclude the ALJ adequately considered and evaluated the medical record relating to plaintiff's physical impairments.

16 - OPINION AND ORDER

### 3. Failure to Give Adequate Reasons for Rejecting the VA's Disability Rating.

An ALJ must ordinarily give great weight to a VA disability determination, but may give it less weight by giving persuasive, specific, and valid reasons supported by the record.  McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).

In his findings, the ALJ noted that plaintiff's 60% VA disability rating amounted only to partial disability, which is not inconsistent with plaintiff's history of working at least part-time.  The ALJ also noted concerns expressed by the VA physicians who evaluated plaintiff in August 2001 for purposes of reviewing her disability rating that there was "little objective evidence to support the degree of pain and limitations of [plaintiff's] capability," and plaintiff "was maximizing her discomfort level."  The ALJ also referred to a November 2002 evaluation, in which the VA physician again opined that there appeared "to be . . . some maximizing of [plaintiff's] symptomatology during exam."

On this record, I conclude the ALJ gave specific and valid reasons based on the record in this case for giving less weight than is normally required to the VA's partial disability determination.

### REMAND

As set forth above, I conclude the ALJ erred in not finding

17- OPINION AND ORDER

plaintiff's depression is a severe impairment. I conclude that this error may be remedied by a remand for further proceedings in which the ALJ shall consider whether plaintiff's severe depression, when considered in conjunction with her physical impairments, would have precluded her from engaging in substantial gainful activity during the closed period from April 1, 2002 through December 31, 2005.

I note plaintiff's depression did not preclude her from performing part-time work during at least some part of the closed period in question. The issue the Commissioner must address on remand, however, is whether plaintiff's depression in combination with her other impairments would have precluded her from engaging in substantial gainful activity, not just part-time work, during that closed period.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is **REMANDED** for further proceedings as set forth herein.

IT IS SO ORDERED.

DATED this 15 day of October, 2009.

                                       /s/ Malcolm F. Marsh
                                       MALCOLM F. MARSH
                                       United States District Judge

19 - OPINION AND ORDER